## Bela W. Ormsby v. Watson J. Barr.

*Mortgage: Evidence of payment: Presumption from conduct of mortgagee.* A mortgagor delivers to the mortgagee property in value not far from the amount due upon the mortgage: the mortgagee delivers to the mortgagor the note and mortgage, treats the property he has received as his own, and authorizes it to be publicly asserted that he had taken it for the mortgage debt. A subsequent

grantee of the mortgagor files a bill to remove the cloud of the mortgage upon the title; and the testimony being conflicting as to the intent of the parties : HELD, that the conduct of the mortgagee would authorize a stranger to believe that the mortgage was paid.

*Heard October 6. Decided October 11.*

Appeal in Chancery from Clinton Circuit.

Bela W. Ormsby filed his bill in the Circuit Court for the County of Clinton in Chancery, against Watson J. Barr, to restrain Barr from proceeding to foreclose a mortgage, executed by one Albright to Barr, upon premises, the title to which the complainant claims to have derived from Albright; and praying also that the mortgage may be decreed to be satisfied, and discharged of record. The controversy between the parties is mainly one of fact as to the intent of Albright and Barr in delivering and receiving a quantity of broom` corn, alleged by Albright to be in payment of the mortgage, and by Barr to have been received as collateral and to be applied on the mortgage, when the value of it should be realized, and not before.

The Court below held that it was a payment, and decreed that the mortgage should, as against the complainant, be declared satisfied. From this decree the defendant appeals to this Court.

*Strickland & Stout,* for complainant.

*Norris & Uhl,* for defendant.

GRAVES, J.

In this cause the bill was filed to stay the foreclosure and procure the discharge of a mortgage, on the alleged ground that it had been paid.

It is conceded that one Marvin Albright gave his promissory note to the defendant, Barr, bearing date the 12th of December, 1864, by which he promised to pay to

Barr, or the bearer of the note, $110 in one year from the date, with interest at ten per cent., and that on the 19th of the same month, Albright, with his wife Lavina, executed to Barr their mortgage on the northwest quarter of the northwest quarter of section twenty-four, in township six north, of range two west, in the County of Clinton, to secure the payment of the note, and that the mortgage was placed upon record.

The bill states that about the month of October, 1865, Albright, the mortgagor, paid the note to the defendant, Barr, and took up the note and mortgage, and had them in his possession ready to be produced.

That on the third day of November, 1866, he, the complainant, purchased the premises of Albright, and that the defendant, Barr, insisting that the mortgage debt was unpaid, commenced proceedings for the foreclosure of the mortgage in July, 1867.

The answer of Barr leaves complainant to prove his purchase, and denies that the note has been paid, and insists that the sum secured to be paid by it according to its terms is still due and payable.

The answer, however, admits that Albright has the note and mortgage in his possession, and sets up matter in explanation of that circumstance. The explanation given is in substance that in October, 1865, Albright being the owner of about sixteen hundred pounds of broom-corn, called on defendant, Barr, and stated to him that one Dolson was about to levy on the corn, and that he wanted him, Barr, to take the corn into possession and hold it as his property, which, however, he, Barr, refused to do; that then it was agreed that Barr should take the corn and "sell and disposeof the same when, where, and to whom, and at such price as he," Barr, should think best, and apply the proceeds toward the payment of the note and mortgage, leaving

any balance not covered by the proceeds of the sale of the corn to remain secured by the mortgage.

That Albright represented that the corn would bring nearly the amount of the mortgage debt, and that he, Barr, *relying upon that representation* delivered *the note and mortgage to Albright,* but then expressly refused to discharge the mortgage until, from the sale of the corn or otherwise, the debt should be fully paid.

The answer proceeds to state the efforts made by Barr to sell the corn, the sale of it at length in May, 1867, to one Herrick upon credit, and that such sale has produced nothing as yet.

The answer also states that in 1867, Albright offered Barr a silver watch and $10 besides the Herrick note as payment in full of the mortgage.

The Court below made a decree declaring the proceedings to foreclose void, declaring the mortgage not a lien against the title of complainant, and adjudging the premises freed from the cloud of the mortgage. On looking into the depositions, it appears that Albright testified without objection to the conveyance to Ormsby, and that no attempt was made to impugn that testimony. The title of complainant was therefore sufficiently made out.

The issue made by the pleadings, and now open to contest, is whether at and before Ormsby's purchase, which was in the fall of 1866, the mortgage and note in question were paid.

The testimony of Herrick and wife, and of Alice and Jane Barr, as to statements of Albright, made long after his conveyance, was only admissible under the objection taken, for the purpose of effecting Albright's credibility, and it cannot be now resorted to as direct evidence to support complainant's side of the issue.

We have seen the version which Barr has given by his

answer, of the transaction out of which the question as to payment of the mortgage arose. On turning to Albright's testimony it is seen that he swears positively that he sold the corn to Barr for the mortgage, and, that when he did so, he apprehended trouble from Dolson, and desired to pay for his place; that Barr found it inconvenient at the time to discharge the mortgage, but promised to do so the first time he should be in town.

Henry Spaulding testified, that in October, 1865, the broom-corn being in his barn, Barr came to see about getting it, and said that he had made a bargain with Albright for the corn; that he had *bought* it of Albright, and when it was sold again, the avails were to be applied on the mortgage, and that he considered the corn was paid for, and then wanted to get it. Mrs. Albright, on her first examination, testified that in January, 1867, she was at the house of Mr. Barr, and that Mr. Russell and Mr. Barr were there, and Mrs. Barr was going back and forth; that Russell had been anxious to buy the land the mortgage had been on, and her husband gave him encouragement, while she did not wish to part with the land; that on this occasion Mr. Barr said: "Will you have $300, provided you sell the land;", that she replied: "It is paid for, and I would like to keep it," when Barr answered: "Yes, it is paid for, but you have three hundred dollars;" she further testified that the price Russell was to give was three hundred and some odd dollars. On her second examination, she testified that in 1867 Barr talked with her about the matter, and claimed that Albright ought to make up his loss on the corn; that Barr said he had his pay when he gave up the note and mortgage.

She also testified, that in a subsequent interview, when Charles Rosenburg was referred- to by Barr as one having knowledge about the contract, Barr stated to her that the

corn was to be indorsed on the mortgage, and that Rosenburg would so inform her. She also stated that Albright felt that the mortgage was paid; and that she induced her husband to make the offer of a watch and ten dollars.

Martin Breining testified that he was at work for Barr, and present on an occasion when Dolson came there about the time of the broom-corn matter; that he did not hear all the conversation, but about the time Dolson was to leave, he heard Barr say he had bought the broom-corn and paid for it, and should hold it.

The defendant Barr testifies that it was expressly agreed that the broom-corn should be taken as collateral security to the mortgage, and, when sold, to be applied, and if it went beyond the debt, the balance was to be paid to Albright, and if it brought less, then Albright was to pay the deficiency, and also pay him, Barr, for his trouble and expense; that the corn was not taken as agreed to be taken in payment; and that he never agreed to discharge the mortgage. Henry Spaulding testified that some time in the fall of 1866, Albright told him that he had been pretty smart for Dolson; that he had turned out some broom-corn to Mr. Barr to apply on a mortgage, and when the corn was sold, if there was anything more than enough to pay the mortgage, he was to have the balance from Barr. Charles Rosenburg testified to the declaration by Albright. He states that at one time, in the road, Albright said Barr was to take the corn, and when it was sold, it was to be endorsed on the mortgage, and if it overrun the mortgage, Barr was to pay the balance to Albright, and if it fell short Albright was to make up the deficiency, and pay Barr for his trouble; and again the witness stated that Albright said that Dolson was trying to take advantage of him, and he was owing Barr, and he thought it right that

he should have his pay, and he was going to let him have the broom-corn as far as it would go on the mortgage.

Mr. Russell, on being examined, referred to the occasion when Mrs. Albright had the talk with Barr, as related by her, and testified that he did not recollect of hearing Barr say that the land was clear of the mortgage.

Three or four witnesses refer to conversations by Albright, in which, it is said, he talked about paying the balance of the mortgage.

The defendant Barr, when on the stand, explained the giving up of the note and mortgage by saying in substance, that it was to enable Albright to make use of his possession of the papers in connection with the arrangement about the corn in such manner as to keep the corn from Albright's creditors. It is true that he did not use this language, but no other construction can be put upon his testimony, nor any other meaning ascribed to it.

We cannot survey the evidence in this case without feeling much difficulty as to how the precise point in issue should be determined.

The testimony, in its verbal aspects, is conflicting and puzzling, and we think a result based upon criticism and comparison of the language of witnesses, would be as likely to be erroneous as right. The safest course in such a case as this is to rely mainly upon any leading circumstances bearing upon the issue, which are found to be established. By so doing, we simplify the investigation, and bring into proper relief these matters, which ought to have controlling weight.

The following circumstances are developed by the evidence before us:

1st. The broom-corn was transferred by Albright to Barr, and it was in some way to sink the whole or a part of the mortgage debt.

2d. The mortgage debt was the consideration for such transfer.

3d. Both Albright and Barr believed that the value of the corn exceeded the mortgage debt.

4th. Barr immediately took complete and exclusive possession of the corn in virtue of the arrangement, and, until it was disposed of, continued in possession.

5th. Barr sold the corn as his own, and took a note therefor running to himself.

6th. Barr surrendered to Albright the note and mortgage.

Now the possession of these papers by Albright created a very strong presumption that they were paid, and this presumption could only be displaced or repelled by very clear proof that the debt was still owing.—*Garlock v. Geortner*, 7 *Wend. R., 198; Palmer v. Gurnsey, Id., 248;* see also *Novelli v. Rossi, 2 Barn. & Adolph., 757; Gibbon v. Featherstonhaugh, 1 Stark, N. P. Cas., 225.* It cannot be said that the evidence much preponderates, if at all, in favor of Barr's explanation of his reason for putting the papers in Albright's hands.

Several of the circumstancs above stated tend to contradict that explanation, and to justify Albright's version. In any view, the proof brought forward to repel the presumption of payment, arising from possession of the papers by showing that such possession was not on account of payment, is neither strong nor clear.

The offer of Albright to pay something besides the corn is explained by Mrs. Albright very satisfactorily when she represents it as an attempt to compromise the business with Barr, and made through her intercession. It was not, therefore, a confession by Albright that the mortgage debt was unpaid. The declarations said to have been made on two or three occasions by Albright, as to the terms and

occasion of the transfer of the corn, do not agree with his sworn statements, nor harmonize with some of the established facts, which agree with those statements.

The necessity for extreme caution in receiving and weighing evidence of verbal admissions is acknowledged by writers on the law of evidence, 1 *Greenleaf Ev.*, § *200*, and is taught daily by the experience of the profession. The case must be a strong one which will justify a court in setting aside the deliberate and consistent statement of the witness on oath, because it appears to be opposed to statements in part—conversations as remembered and interpreted by witnesses called to repeat such conversations on the stand. It may be safely affirmed that this evidence of declarations by Albright, so far as inconsistent with his testimony, should not detract from the natural force and tendency of the leading and important circumstances before mentioned.

Those circumstances, which upon the evidence are certainly made out, are very significant and must necessarily be entitled to great weight.

They all point to one conclusion and scarcely admit of any other, and that conclusion is that the corn was actually considered by Barr and Albright of more value than the mortgage debt, and was taken in lieu of it. This, I think, was the understanding of Albright, and it seems difficult to explain the conduct of Barr upon any other reasonable hypothesis, or to reconcile a portion of the facts in any other way. It certainly seems incredible that Mr. Barr, who does not appear to be wanting in sense or discretion, should have taken the corn and dealt with it as his own and declared it his property, and at the same time have given up the note and mortgage, and authorized it to be publicly asserted that he had taken the corn for the mortgage debt, if, in fact, the mortgage was not to be affected

at all. It seems more reasonable to believe what the main facts express, and to adopt the view taken by the Court below. The decree below should be affirmed with costs.

CAMPBELL, CH. J. concurred.

COOLEY and CHRISTIANCY, JJ. concurred in the result.