[United States Life Insurance Co. v. Lesser.]

# United States Life Insurance Co. v. Lesser.

### Action upon a Life Insurance Policy.

1. *Insurance policy; construction of condition contained therein.*
A condition in a policy of life insurance "that no person other than the president, together with the secretary or actuary shall have power to alter or waive any contract or condition on behalf of the company," while valid and intended to restrain and to give notice of the restriction of the authority of agents as distinguished from the officers of the company, is a mere condition reserved for the benefit of the company: and of this condition the company can, at its volition, take advantage, or waive it and delegate to agents the implied power vested in the president, together with the secretary or actuary.

2. *Agency; when agent's authority question for the jury.*—If the fact of agency, or authority of an agent and its extent is not evidenced by a written instrument, but rests in parol and is a matter of dispute, it becomes a question of fact to be determined by the jury from the evidence.

3. *Authority of insurance agent; right to extend time for payment of premium.*—In an action on an insurance policy, where there is an issue as to whether or not the local agent of the insurance company had the right to extend the time for the payment of the premium, as denoting the power given by the insurance company to such agent, evidence is admissible as to its practice in allowing the agent to extend the time for the payment of premiums, and upon such evidence the jury may determine whether he was authorized to make such extension, and if so, whether in fact such extension was made in the case being tried.

4. *Same; same.*—In such a case the fact that the premium was already past due when the extension was made, is not sufficient of itself to prevent the extension from operating a waiver of the forfeiture.

5. *Same; same.*—Notwithstanding there is provision in the policy of life insurance that the agents of the company issuing said policy were not authorized to waive forfeitures, if such company sends to one of its agents for collection a renewal receipt for a premium, properly signed and to be delivered upon the payment of the premium, there is an implied authority

granted to the agent to extend the time of payment and thereby to waive the forfeiture resulting from the failure to pay the premium at the time it was due; and in the event of such extension and waiver the company is bound thereby.

6.  *Waiver of forfeiture of insurance policy.*—Forfeitures of insurance policies because of the non-payment of premiums, is not favored in the law, and courts are prompt to take advantage of any circumstances that indicate an election to waive the forfeiture, or an agreement to do so, on which the party insured has relied and acted.

7.  *Same; what amounts to waiver.*—Any acts, declarations or course of dealing by an insurance company, with knowledge of facts constituting a breach of the conditions in the policy, recognizing and treating the policy as still in force, and leading the insured to regard himself as still protected thereby, will amount to the waiver of a forfeiture, by reason of such breach, and will estop the company from setting up the same as a defense when sued upon said policy.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Emil Lesser against the United States Life Insurance Company, to recover $3,000 alleged to be due on a policy of insurance, which was issued by the defendant on March 8, 1893, upon the life of one, Henry Silberman, and was made payable to Emil Lesser, the plaintiff. Silberman died on October 24, 1893. The defendant pleaded four pleas. The first and second pleas were the general issue. The third plea was a special plea, in which the defendant set up that the policy went into effect on April 5, 1893; that under the provisions of the contract of insurance the premiums were due semi-annually, on, to-wit, April 5th and October 5th, or within ten days thereafter; that the premium due October 5, 1893, was never paid, and that said policy thereof became forfeited under its terms; that in the application for said insurance there was an agreement signed by said Silberman that no person other than the president, together with the secretary or actuary would have the power to alter or waive any contract or condition on behalf of the company, and that neither the president nor the secretary, nor the actuary, or either of them, waived or altered any condition or contract contained in said policy. The fourth plea was substantially the same as the third,

except that it omitted reference to that part of the contract as to president, secretary and actuary.

To the defendant's third and fourth pleas the plaintiff filed seven replications. In the first replication, the plaintiff averred that on October 11, 1893, he made a tender of the premium due on said policy of October 5, 1893; that this tender was in lawful currency of the United States, and was made payable to one I. L. Fraleigh, an agent of the company, who was duly authorized to receive said premium on behalf of said company, and who, at the time of said tender, failed and declined to accept the same. In the second replication, the plaintiff averred that defendant waived the payment of said premium payable on or before October 15th, 1893, by averring a certain agreement between plaintiff and company, certain acts, conduct and course of dealings and declaration of the agents of said company, as follows: That on, to-wit, October 11, 1893, the premium due on October 15th, 1893, was tendered or offered to its agents; that on said date said agent Fraleigh and plaintiff mutually agreed that the said policy sued on should be rewritten in New York city into two policies of one and two thousand dollars respectively; that said policy was then delivered to said agent with the understanding and agreement that said policy should remain in full force and effect until the return of said two policies from New York rewritten as aforesaid; that upon the premium due October 15th, 1898, being tendered said agent as aforesaid, said agent stated it could be paid said agent on the return of said policies rewritten as aforesaid; that said two policies rewritten as agreed, have never been returned to the plaintiff and no demand made by said company or its agents for said premium of October 15th, 1893, that by a course of dealing between the said company and plaintiff premiums due said defendant on said policy were payable to said Fraleigh, its agent, at the city of Birmingham—a great distance from New York city; that one Shepherd was the manager for defendants in Alabama and Birmingham, and on October 21st, 1893, consented to such policy being rewritten into two policies.

[United States Life Insurance Co. v. Lesser.]

Replication three was substantially the same as the second just quoted. Replication four amplified the second and third replications, and among other things averred additionally that the policy to be rewritten reached the home office in New York prior to the death of Silberman, and a sufficient time prior to his death within which to disaffirm the agreement and understanding of its agents—of which it had full knowledge— and that the defendants failed to disaffirm said understanding during the life of Silberman, although it had a reasonable time within which to do so.

The fifth and sixth replications were joinders of issue upon the pleas filed by the defendant. The seventh replication was in words and figures as follows: "7. And for further replication to the said defendant's third and fourth pleas, the said plaintiff says that prior to the 15th day of October, 1893, to-wit, on the 11th day of October, 1893, the agent of the said defendant in the city of Birmingham, in the State of Alabama, where the said plaintiff then lived, agreed with the said plaintiff to extend the time for payment of said premium payable on, to-wit, the 15th day of October, 1893, until the return to the said plaintiff of two policies of insurance which the said agent then and there agreed that the said defendant would issue in lieu of, and to take the place of the said policy sued on, one for one thousand dollars, and the other for two thousand dollars; that said agent of said defendant in the said city of Birmingham notified F. B. Shepherd, the manager and agent of said defendant at Atlanta, in the State of Georgia, of the fact of such extension, and that the said Shepherd, who then and there had authority to bind the said defendant in respect to such extension, did, on, to-wit, the 21st day of October, 1893, and before the death of the said Silberman, ratify the extension so made as aforesaid, for the payment of the aforesaid premium. Wherefore the said plaintiff says that the said defendant waived the payment of the said premium, which became payable on or before the said 15th day of October, 1893." There were demurrers filed to each of these replications, which were overruled, but the opinion on the present appeal renders it unnecessary to set these demurrers out in detail.

To the replications of the plaintiff the defendant filed the following rejoinder: "The defendant for further rejoinder to said special replications numbers 1, 2, 3 and 4, says: That the plaintiff spoke of paying the premium on or about the 11th day of October, 1893, and said he would pay the same to one Fraleigh, who claimed to be an agent of the defendant, and at the same time remarked that he would like to have the said policy sued on rewritten into two policies, one for two thousand dollars and one for one thousand dollars, and said Fraleigh said to the said plaintiff he need not pay the premium until the policies were rewritten and returned, and that that would be alright, and thereupon said plaintiff withdrew his offer to pay said premium or tender. This defendant says that it had no notice of such an agreement until after the death of said assured, Silberman, and that it never did ratify or confirm said agreement, and that said Fraleigh had no authority to enter into any such agreement or to extend the payment of said premium, and the defendant denies that said Shepherd had any notice of said agreement except a request from said Fraleigh to forward said policy sued on to the office of said defendant in New York with request to rewrite the same into two policies, as aforesaid; and the defendant denies that said Shepherd had any notice whatever that said Fraleigh had agreed to extend the time of payment of said premium until said rewritten policies should be returned. The demurrers to this rejoinder were overruled; and thereupon issue was joined upon the pleadings as filed.

On the trial of the case the following facts were shown: A policy of insurance was issued by the defendant upon the life of one Henry Silberman, on March 8, 1893, and made payable to the plaintiff. Henry Silberman died October 24, 1893. This policy was taken out through I. L. Fraleigh in the city of Birmingham. Fraleigh had been for years prior to the taking out of the policy and up to said November, 1893, the agent of the defendant company in the city of Birmingham. Fraleigh was known to be acting for the company by the home office at New York. He had been appointed to such position by F. B. Shepherd, the manager of the

company in Atlanta, who had control and management of the company in Alabama up to 1894. Fraleigh had established an agency in the city of Birmingham and had appointed sub-agents and published advertising matter, used letter heads of his agency in letters to Shepherd and the company, distributed literature, and did other acts as such agent.

The first prmium, due April 5th, 1893, according to the undisputed testimony, was paid. The next premium became due on October 5th, 1893, or within ten days thereafter. According to the testimony, on or about October 11th, 1893, Lesser desiring to have the policy sued on changed into two policies of $1,000 and $2,000 respectively, handed the same to Fraleigh with an agreement and understanding, on the part of Fraleigh and Lesser, the policy was to be changed, not in substance, but merely in form, as stated, and to remain in full force and effect until the return of the two policies as aforesaid; to be rewritten in New York. And on the same day and about the same time B. Steiner, acting for Lesser, offered to pay Fraleigh, who was the agent for the company in Birmingham to receive said premium, the amount due October 15th, 1893. Fraleigh answered that he need not mind then, but to pay it on the return of the two policies from New York. Fraleigh was a tenant of Steiner, and defendant's office was in Steiner's bank. The conversation between Steiner and Fraleigh as to the premium occurred in office hours and in Steiner's bank in Birmingham.

Fraleigh, on October 20th, 1893, sent the policy, No. 75,844, in suit, to F. B. Shepherd, and said: "Have policy changed to $2,000 and $1,000 instead as it is now," and enclosed therewith the renewal receipts past due October 5th, 1892. On October 21, 1893, F. B. Shepherd, the manager, wrote to the company in New York: "Herewith hand you policy 75,844, Silberman, together with October renewal, with the request that you rewrite it into two policies of $1,000 and $2,000, instead as it is now." Shepherd's letter of October 21, 1893, reached the home office, as is shown by the stamp of the assistant secretary, on October 23, 1893. Silberman died on the 24th of October, 1893. And then on October 26, 1893, the company telegraphed Shep-

herd: "Policy 75,844, Silberman, with Oct. 5 renewal, here and cancelled. Return 75,843 for cancellation. Both were unpaid at time of death." The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

The court in his general oral charge to the jury instructed them, among other things, as follows: (1) "Then I will say, gentlemen, if the jury should find that an agent of an insurance company is duly authorized by the company to accept the payment of a premium, and if the payment is offered to him, then he has the power to bind the company so far as to prevent the forfeiture of the policy if he declines to receive it, or directs that the payment shall be made at a future time upon the return of the policies to be rewritten, as indicated by the proof in this case they were to be rewritten according to an agreement of the parties." (2) "However that may be I am of the opinion and I charge the jury as the law that if he (Fraleigh) had authority from the company to receive these premiums, and if the premiums were offered to him, and if he directed that the payment should be withheld until the policy had been rewritten and returned, and if the death occurred before that was done, then that would be binding upon the company so far as to prevent the forfeiture of the policy."

To these separate portions of the court's oral charge the defendant separately excepted, and the defendant also separately excepted to the court's refusal to give each of the following written charges requested by it: (1) "The court charges the jury that I. L. Fraleigh was not the agent of the defendant company to collect the renewal premiums on the policy sued on, but was the agent of F. B. Shepherd." (2) "The court charges the jury that I. L. Fraleigh had no authority to make a contract to have the policy sued on rewritten into two policies, and had no authority to extend the time of the payment of the premium due on said policy on the 5th day of October, 1893, beyond the ten days of grace, and unless the jury believe from the evidence that the defendant company had full knowledge of said agree-

ment prior to said Silberman's death and ratified or confirmed said agreement, the verdict of the jury must be for the defendant." (3) "The court charges the jury that there is no evidence in this case tending to show that the defendant had any knowledge or notice of the alleged agreement between I. L. Fraleigh and plaintiff." (4) "The court charges the jury that if they believe the evidence in this case they must find for the defendant." (5) "The court charges the jury that if they believe the evidence in this case, they must find that I. L. Fraleigh did not have authority to make the alleged contract alleged in the second, third and fourth replications of plaintiff to the third and fourth pleas of the defendant." (6) "The court charges the jury that neither I. L. Fraleigh nor F. B. Shepherd had any authority to alter or waive any part of the contract or any condition thereof contained in the policy sued on." (7) "The court charges the jury that if they believe that all that took place between B. Steiner and I. L. Fraleigh in the office of the bank of Steiner Brothers, to which B. L. Steiner testified, was that said Fraleigh came in and asked Steiner whether he was going to pay the premium now, and that said Steiner said 'I will pay it now or pay it when the policies are returned,' and that said Fraleigh said 'pay it when the policies are returned,' and that was all that occurred on that occasion, then I charge you can not find that said plaintiff by said Steiner tendered or offered to pay the defendant the premium then due, and the defendant refused to take it, and such an offer to pay the same was not sufficient as a compliance with the condition requiring the premium paid on the 5th day of October, 1893, or within ten days thereafter, or the policy is void and forfeited." (8) "The court charges the jury that F. B. Shepherd had no authority to ratify or confirm the alleged contract in the seventh replication by the plaintiff to the defendant's third and fourth pleas so as to bind the defendant." (9) "The court charges the jury that if they believe from the evidence that Shepherd had no knowledge of the said contract alleged in the seventh replication to the defendant's pleas numbers three and four prior to the 20th day of October, 1893, then I charge you that Shepherd had no

authority to ratify or confirm said alleged contract, so as to bind the defendant after the 20th day of October, 1893."

There were verdict and judgment for the plaintiff, fixing his recovery at $3,020.90. The defendant appeals, and assigns as error the several rulings of the trial court, to which exceptions were reserved.

HEWITT, WALKER & PORTER, for appellant.—Appellant contends, in the first place, that I. L. Fraleigh was not its agent; and, in the second place, that if he were such agent, still the agreement, if made by him and Shepherd, did not bind appellant, because their authority was exceeded and there was no ratification of their acts.—*Masselback v. Frederick*, 122 N. Y. 578. Under a policy containing a provision that the insurer shall not be bound by any act or statement made by any agent which is not authorized by the policy or contained therein, or in any written paper mentioned therein, the power can only be exercised in the mode prescribed, unless it is shown that the agent possessed *actual or apparently* the power of his principal in respect to the provisions alleged to have been waived.—*Walsh v. Hartford Ins. Co.*, 73 N. Y. 5; *Marvin v. Universal Life Ins. Co.*, 85 N. Y. 278.

It cannot be questioned that an insurance company, as well as an individual, may limit or restrict the powers of its agent; and when such restrictions are known to the person dealing with the agent, the company is only bound to the acts of the agent performed within the scope of the authority conferred.—*Havens v. Insurance Co.*, 12 N. E. Rep. 137; *Cleaver v. Insurance Co.*, 32 N. W. Rep. 660; *Cleaver v. Insurance Co.*, 39 N. W. Rep. 571; *Russell v. Insurance Co.*, 42 N. W. Rept. 654; *Hawkins v. Insurance Co.*, 35 N. W. Rept. 34; *Knudson v. Insurance Co.*, 43 N. W. Rept. 954; *Merserau v. Insurance Co.*, 66 N. Y. 274; *Gladding v. Insurance Co.*, 4 Pac. Rept. 764; *Enos v. Insurance Co.*, 8 Pac. Rept. 379.

RICHARD H. FRIES, FRANK WHITE and JOHN P. TILLMAN, *contra.*—A tender of payment is equivalent to ac-

[United States Life Insurance Co. v. Lesser.]

tual payment in its effect on the obligations of an insurance policy.—*N. Y. Life Ins. Co. v. Clopton*, 7 Bush. Ky. 179; *N. Y. Cen. Ins. Co. v. Nat. Prot. Ins. Co.*, 20 Barb. 469; 2 May on Ins., note 2, p. 733.

Tender is dispensed with or the actual production of the money is not required where the party is ready, able and willing to pay it, but is prevented by the creditor declaring he will not receive it, or by his making any declaration equivalent to a refusal to accept it if tendered.—*Root v. Johnson*, 10 South. Rep. 293; 25 Am. & Eng. Encyc. p. 904; *Rudolph v. Wagner*, 36 Ala. 698.

A tender may be waived or dispensed with by words or acts, and may be excused by circumstances or omissions of the party to whom it should otherwise have been made.—7 Waite's Actions and Defenses, 593; 2 Greenleaf on Ev. §§ 602, 603, p. 651; *Glover v. Lyon*, 57 Ala. 365.

Any conduct, acts, course of dealing or declarations on the part of the company or its agents, recognizing a policy as in force, after a technical forfeiture, constitutes a waiver of such forfeiture and the company is estopped legally, morally and justly from claiming such forfeiture.—*Pruitt v. Mobile Life Ins. Co.*, 74 Ala. 488. The rule is otherwise expressed by Chief Justice STONE in *Home Protection of North Alabama v. Avery*, 85 Ala. 351, that if the insurance company, by its habits of business, creates in the mind of the policy holder a belief that payment may be delayed until demanded, or otherwise waives the right to demand the forfeiture this is binding on the company, notwithstanding the express letter of the policy may not have been conformed to.—*Ins. Co. v. Eggleston*, 96 U. S. 573; 2 May on Insurance, 1157, 1161; also §§ 769, 770, 771, 774, 779; *Ins. Co. v. Norton*, 96 U. S. 234. Forfeitures are not favored in law. Courts lean to defeat them on slight evidence of waiver.—2 May on Insurance, 1158, § 501.

Although a policy declares that agents have no power to waive a forfeiture, the company may, nevertheless, authorize them to do so, or by its conduct estop itself from denying that they had such authority.— *Ins. Co. v. Norton*, 96 U. S. 234; *Ins. Co. v. Maguire*, 51 Ill. 342; *Perkins v. Ins. Co.*, 4 Cow. 645; *Lightbody v.*

37

*Ins. Co.*, 23 Wend. 18; *McEwen v. Ins. Co.* 5 Hill. 101; *Ins. Co. v. Farenkung*, 68 Ill. 463; *Keenan v. Ins. Co.* 12 Ia. 126.

A party can not insist upon a condition precedent, the breach of which it caused.—*Bledsoe v. Ins. Co.*, 52 Ala. 552; *Young v. Hunter*, 6 N. Y. 203.

An agent of a foreign insurance company may waive conditions in a policy, although it is contrary to its expressed terms to do so.—*Piedmont & Arlington Life Ins. Co. v. Young*, 58 Ala. 476; *O'Brien v. Union Mut. Life Ins. Co.*, 22 Fed. Rep. 586; *Jennings v. Mut. Life Ins. Co.*, 148 Mass. 61; *Maryland Fire Ins. Co. v. Gusdorf*, 43 Maryland, 506; *Mich. State Ins. Co. v. Lewis*, 30 Mich..41; 2 May on Ins., pp. 1154-1157; *Ins. Co. v. McGinnis*, 51 Ill. 342; *Perkins v. Ins. Co.*, 4 Cow. N. Y. 645; *Lightbody v. Ins. Co.*, 23 Wend. N. Y. 18; *McEwen v. Ins. Co.*, 5 Hill, N. Y. 101; *Ins. Co. v. Forben-King*, 68 Ill. 463; *Keenan v. Ins. Co.* 12 Ia. 126;1 May on Ins., § 143; *Smith v. St. P. Fire & Marine Ins. Co.*, 3 Dak. 80.

Agents of foreign insurance companies have necessarily greater powers than domestic companies, and may bind agents, clerks and sub-agents.—*Syndicate Ins. Co. v. Catchings*, 104 Ala. 176; May on Insurance, 287, § 154.

Evidence of past dealings between the company and the insured is admissible.—2 May on Insurance, 70, § 43; *Home Ins. Co. v. Adler*, 71 Ala. 516. Acts done by an agent within the apparent scope of his authority, bind the principal.—*Birmingham T. & S. Co. v. Louisiana Nat. Bank*, 99 Ala. 379; *Ins. Co. v. McCain*, 96 U. S. 86; Bliss on Insurance, pp. 438, 439, 443, 450.

PER CURIAM.—The action in which the appellee was plaintiff and the appellant defendant, was founded on a policy of insurance on the life of Henry Silberman for $3,000, issued by the defendant, in which the plaintiff was the assured. The assignments of error .are numerous, involving the rulings of the court below on demurrers to special replications in answer to special pleas in bar; the admission and rejection of evidence; and the giving and refusal of instructions to the jury.

[United States Life Insurance Co. v. Lesser.]

The special pleas were numbered respectively three and four. The first in substance alleged that by the terms of the policy expressed as conditions (which are recited) all premiums were payable in the city of New York, at the office of the company, or to a duly authorized agent, in exchange for the receipt of the company, signed by the president, secretary, assistant secretary, or actuary. That the failure to make payment of any stipulated premium when it became due and payable, or within ten day thereafter, if the policy had not been in force full three years, (as this policy had not been,) operated a forfeiture of the policy, and of all payments which had been made thereon. That a semi-annual premium on the policy became due and payable on the 5th day of October, 1893, which was not then paid, nor within ten days thereafter, ten days of grace being allowed for its payment. That the policy contained a provision expressed in these words: "That no person other than the president, together with the secretary or actuary, shall have power to alter or waive any contract or condition on behalf of the company," and the plea negatived the waiver or alteration of any contract or condition expressed in the policy, by these officers or either of them. The fourth plea, omitting all reference to the provision touching the alteration or waiver of contracts or conditions, predicated the defense on the failure to pay the semi-annual premium within the time appointed.

The plaintiff in answer to the pleas interposed five special replications, numbered respectively one, two, three, four and seven, to the first four of which the defendant demurred. With the exception of the first, which was of tender of the premium within the time of credit allowed, the replications are in confession, and avoidance. They proceed on the hypothesis that the failure to pay the premium within the time appointed would operate a forfeiture of the policy and of all rights of the plaintiff thereunder, unless payment was waived, or non-payment was superinduced by the acts and conduct of an authorized agent of the defendant. We do not deem it necessary to pass on the demurrers to the special replications—they have not been argued by the counsel for the appellant, and the issues

as formed, upon which the trial was had, enabled the parties to introduce all legal evidence in support of their respective contentions.

The question to which the argument of the counsel for the appellant has been mainly directed is whether in the presence of the condition of the policy "that no person, other than the president, together with the secretary or actuary, shall have power to alter or waive any contract or condition on behalf of the company," it was competent for the plaintiff to show that an agent or agents of the appellant, in whose acts neither of these officers participated, had waived the payment of the premium at the time appointed by their acts and conduct superinducing non-payment, the breach of the condition insisted on as cause of forfeiture. The validity of the condition, and that of it the plaintiff had knowledge prior to the alleged waiver is not disputed; nor can it be doubted that the condition was intended to restrain, and to give notice of the restriction of the authority of agents as distinguished from the officers of the company. Whatever may be the scope—to whatever of contracts or conditions expressed in the policy it may extend—it is not in prohibition or limitation of the power of the company to contract; or to abrogate, or to modify contracts or conditions intended exclusively for its benefit. It is no more nor less than a condition reserved for the benefit of the company, of which at its volition it could take advantage, or waive, and delegate to agents the implied power vested in the president in conjunction with the secretary or actuary.—*Ins. Co. v. Norton*, 96 U. S. 234; *Ins. Co. v. Doster*, 106 U. S. 30; *Bodine v. Ins. Co.* 51 N. Y. 117; (s. c. 10 Am. Rep. 556) ; *Lyons v. Travellers' Ins. Co.*, 55 Mich, 141; (s. c. 54 Am. Rep. 354) ; *Ins. Co. v. Earle*, 33 Mich. 155; *Viele v. Germania Ins. Co.*, 26 Iowa 9; (s. c. 96 Am. Dec. 83).

The waiver of the payment of the premium on the day appointed and the conduct superinducing non-payment, is imputed particularly, we may say, exclusively to Fraleigh, and the point of controversy is whether he was an agent of the company, and if agent whether the waiver and conduct was not in excess of the author-

ity conferred upon him. Passing for the present the consideration of the implication of authority deducible from the fact that the receipt for the premium had been intrusted to Fraleigh for collection, and that payment to him would have been full compliance with the condition, keeping the policy in force, there is other evidence, free from all just objection, having, to say all that it is within the province of the court to say, a reasonable tendency to show that Fraleigh was an agent of the company and the scope of his authority.

The fact is not controverted that in the exercise of the functions for which it was created a corporation the company was doing continuous business in Birmingham, necessitating the presence of an agent, or agents; for corporations remote from their domicil, cannot act otherwise than by and through agents. The officers to whom the management and control of its affairs may be committed, do not, and it is not contemplated that they will, in the transaction of ordinary business, carry their official functions beyond the home office or domicil, whichever it may be termed. Through and by Fraleigh, insurance was solicited, applications for policies were made, and when the applications were approved and the policies were issued by the home office in New York, delivery of them to the assured was made by Fraleigh. The amount of the policies so obtained by him, aggregating annually, an average of $500,000, the benefit of which accrued to and was accepted by the company. He held himself out in no other capacity than as the agent of the company, and those dealing with him had no knowledge or notice of any other agency, or agent of like power, having an office or place of business in Birmingham or in Alabama. Styling himself agent he corresponded with the home office in New York, and as its agent doing business in Birmingham, the company paid the license tax, State and county, to which he was subject. He collected premiums for the company, and from the moneys collected, retained prizes because of the amount of policies obtained through his agency, sometimes amounting to $1,000 annually. This course of dealing, or of business, could not have been unknown to the board of directors, or other managing officers of the company in New York,

unless (which is not to be presumed), they were want-ing in ordinary care and diligence in the management of the business of the company.

It is insisted that in point of fact Fraleigh was the agent of Shepherd, and not the agent of the company—that it was as agent of Shepherd he transacted business, and was not known to or recognized by the compnay in any other capacity. We have just referred to, and need not repeat the evidence showing or having a reasonable tendency to show, that Fraleigh was the agent of the company, and was so recognized. It is now made to appear that originally Shepherd appoint-ed him his agent, to do for the company, many, if not all, the acts he did ostensibly as the agent of the com-pany. But it was not shown, nor is it insisted, that those dealing with and relying upon Fraleigh, as the agent of the company, had any notice of the agency for Shepherd, or were put on inquiry as to its existence. And now it appears, that the course of business pur-sued was generally, though not uniformly, that Fra-leigh forwarded the applications for insurance he ob-tained to Shepherd, by whom they were transmitted to the home office in New York, and when the policies issued they were sent to Shepherd, and by him sent to Fraleigh for delivery to the assured. So, receipts for premiums were sent to Shepherd and by him counter-signed, and such as came to Fraleigh for collection came from Shepherd. The agency for Shepherd was not incon-sistent with an agency for the company; there was no antagonism of interest or of duty forbidding, though the one might render the other unnecessary. Without displacing the compensation to which Fraleigh was en-titled under the agreement with Shepherd, the company for the same service, could allow the same measure of compensation. Whether paid as agent of Shepherd, or as the agent of the company, the compensation would be paid from the money of the company. If there was contro-versy as to whether in any particular transaction Fra-leigh acted as agent of the company, or as agent of Shep-herd, a question not now of law for the court, but of fact for the jury, would be presented. When the fact of agency, or of the extent of the authority of the agent,

rests in parol, it is the province of the jury to determine the one or the other.—*Syndicate v. Catchings,* 104 Ala. 186.

The receipt for the payment of the premium has been entrusted to Fraleigh for collection. As we have said, he had authority to take payment, and payment to him would have been full compliance with the condition, keeping the policy in force. This would have been true, whether he obtained and held the receipt as the agent of the company or as the agent of Shepherd. The insistence is that in either capacity he was limited in authority to the acceptance of money in payment, on the precise day the premium became due and payable, and the limitation it is argued, results from the restriction of the power of agents expressed in the policy. The insistence is in denial of any authority to the agent, resulting from the duty to collect the premium, and of all discretion in the performance of the duty. In 1 May on Insurance, §134, it is said that an agent authorized to accept the payment of premiums, may exercise his discretion as to the mode of payment—that he may accept a note or check instead of money—that if money be offered, he may let the money lie, calling for it when he wants it—that he may accept the assured as his personal debtor for the premium, agreeing to be himself personally responsible to the company. In Bliss on Life Insurance, § 300, it is said: "An agent entrusted with the renewal receipts may give credit for the renewal premium, and may make a binding renewal by parol, though the receipts provide that they are not to be valid till countersigned by him." In *Ins. Co. v. Wolff,* 95 U. S. 326 the policy (not distinguishable in substance and legal effect fom the present policy), declared as one of its conditions, that the failure to pay a premium on the day when due, should operate a forfeiture. And the policy further declared that agents were not authorized to make, alter or discharge contracts, or waive forfeitures. A local agent to whom a renewal receipt for a premium had been sent for collection, waived payment of the premium on the day when due. The court held that he had authority to make the waiver, saying: "The company, notwithstanding the provision in the policy that its agents were

not authorized to waive forfeitures, sent to them renewal receipts signed by its secretary, to be used when countersigned by its local manager and cashier, leaving their use subject entirely to the judgment of the local agent. The propriety of their use, in the absence of any fraud in the matter, could not afterwards be questioned by the company." This was the interpretation by Fraleigh, and by Shepherd of the authority resulting to each, from the duty to collect premiums. Fraleigh testifying that sometimes when the parties were good, he would extend payments of premiums for 30 to 60 days; and sometimes would take a note for a renewal, informing the party that for him, he would pay the premium to the company. And it is apparent from the frequent collection of premiums by Shepherd, after they had become due and payable, that he waived payment on the day appointed.

The implied authority resulting from the duty to collect the premium is sufficient to support the waiver of payment in this case, deferring it to a future day. Independent of this implied authority, there was evidence, the weight and sufficiency of which, under proper instructions from the court, was matter for the determination of the jury, that Fraleigh had authority to waive payment of premiums. As has been pointed out, he, nor Shepherd, had exacted the payment of premiums *ad diem.* Important as is the prompt payment of premiums to the business of life insurance, it rests in the option of the company to waive the payment in particular cases, an option, we suppose, all companies exercise, and exercise through agents of their appointment. Whether the agent has the authority, is not necessarily, to be shown by direct or positive evidence. More often, perhaps, it is shown or inferred from the course of dealing or business the company and agent pursues, or has pursued.—*Bodine v. Ins. Co.,* 51 N. Y. 117; (s. c. 10 Am. Rep. 566); *Ins. Co. v. Peacock,* 67 Ala. 253; *Ins. Co. v. Norton,* 96 U. S. 234; *Ins. Co. v. Doster,* 106 U. S. 30. Having acquiesced, as the evidence tends to show, in the waiver by Fraleigh of the payment of premiums when due, it is too late for the company, as against the plaintiff, and others similarly situated, to insist that by the terms of the policy,

agents were not authorized to make or alter contracts, or waive conditions or forfeitures. Of the condition, and of the restriction of the power of agents, they had notice, as is insisted by the appellant, but they had also notice, and relied upon the usages of the company, dispensing with the restriction, and of the authority to make waivers, conferred on agents directly or by implication.—*Buckbee v. Ins. Co.*, 18 Barbour 541; *Helme v. Ins. Co.*, 61 Penn. St. 107; *Girard Ins. Co. v. Mut. Life Ins. Co.* 86 Penn. St. 236; *Ins. Co. v. Hoover*, 113 Penn St. 591; (s. c. 57 Am. Rep. 511). The tendency of the evidence supports the insistence of the appellee, that the premium would have been paid at the time appointed, if Fraleigh had not waived the payment, deferring it until the return of the rewritten policies from New York. The cause for deferring payment was committed to his judgment—that which he deemed sufficient was binding on the company, in the absence of fraud or collusion.—*Ins. Co. v. Wolff, supra.* The rewriting of the policy, however it may have served the purposes of the assured, would not have affected any right or interest of the company. It was intended that the new policies should contain all the terms and conditions, and no other, which were contained in the original policy. And it is not a strained inference from the evidence, that if it had not been for the sudden, unexpected death of Silberman, the officers in New York would have assented to the rewriting of the policy, though they knew the premium was unpaid. The policy and application for rewriting had been received; consideration of it was not refused because the premium was unpaid, but for the reason that before any action was taken, the home office was informed of the death of Silberman. If the company contemplated the forfeiture of the policy because of the non-payment of the premium, it should at once have so declared plainly and unconditionally.—*Joliffe v. Mut. Life Ins. Co.*, 39 Wisconsin 119; (s. c. 20 Am. Rep. 35); *Ins. Co. v. French*, 30 Ohio St. 240; (s. c. 27 Am. Rep. 443); *Life Ins. Co. v. Anderson*, 77 Ill. 384.

There is much of conflict in the evidence as to the time when the transaction for the rewriting of the policy occurred, and the policy was delivered to Fra-

leigh for transmission to the home office in New York, whether it was before or after the premium became due and payable. We do not deem it material whether the transaction occurred, and in pursuance of it there was delivery of the policy to Fraleigh, before or after the falling due of the premium. If before it would be a fraud on the appellee to insist on a forfeiture because of the non-payment of the premium, the non-payment having been superinduced by the acts of the agent of the company. If after, the transaction was in recognition of the continuous existence of the policy, and of the election to waive the forfeiture.—*Ins. Co. v. Norton,* 96 U. S. 241. Facts or circumstances, or a course of dealing, indicating that the policy was regarded as subsisting not forfeited, inducing the assured honestly to believe, and to act on the belief, that the conditions are dispensed with, preclude the company from insisting upon the breaches of the conditions as a defense to a suit on the policy by the assured.—*Viele v. Germania Ins. Co.* 96 Am. Dec. 100, and learned note at close of opinion. In *Insurance Co. v. Young,* 86 Ala. 424, it is said: "If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognizes and treats the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture." It is apparent that neither Fraleigh nor Shepherd, regarded the policy as forfeited. If they had so regarded it, they could not have participated in the negotiations for rewriting the policy. It would have been vain for Fraleigh to have received from the appellee, a policy he knew or claimed to be forfeited and without force, and to have sent it to Shepherd for transmission to the home office in New York. And it would have been vain for Shepherd to transmit it, and for the company to have received it, if the election had been of forfeiture. The nature of the transaction, and the relation of the parties, demanded prompt action, if there had been forfeiture of the policy, upon which the company intended to insist. Forfeitures of policies because of the non-payment of premiums is not favored in the law, "and the

courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted."—*Ins. Co. v. Eggleston,* 96 U. S. 572; *Ins. Co. v. Doster,* 106 U. S. 30.

The assignments of error relating to the admissibility and rejection of evidence have been considered. Without prolonging discussion we cannot refer to them in detail. And in passing upon the questions already considered we have passed necessarily upon the admissibility of much of the evidence, and the parts to which objections were the more vigorously pressed. All relating to the agency of Fraleigh was of more or less tendency to show the agency, the course of business he pursued, and the recognition of him by the company as its agent. Several of the assignments relate to the exclusion of opinions, or conclusions of law or of fact upon the part of witness. The court below properly excluded the opinions and also the conclusions, reserving to itself the determination of the matters of law, and to the jury the determination of matters of fact.

The summary of our conclusions is, first, that the condition of the policy restraining the power of agents "to alter or waive any contract or condition on behalf of the company" was a condition reserved for the benefit of the company, of which it could take advantage or could waive it and delegate to agents the implied powers vested in the president in conjunction with the secretary or actuary. Second, that there was evidence having a reasonable tendency to show that Fraleigh was an agent of the company, and the scope of his authority. Third, the fact of his agency and the extent of his authority resting in parol, became matter for the determination of the jury. Fourth, that the extent of his authority need not be shown by direct or positive evidence—that it may be shown or inferred from the course of dealing pursued by him and the company. Fifth, that having been entrusted with the collection of the renewal receipt for the premium, he could waive payment of the premium on the day appointed, deferring it until the return of the rewritten policies from the home office in New York, or until there was refusal to rewrite, of which the assured had notice. It is in

connection with these propositions, the instructions given or refused, must be considered.

The defendant requested nine instructions, which were refused, and we deem it the more convenient to consider them before referring to the instructions given, to which exceptions were reserved.

The first of the instructions requested, affirmed as matter. of law, that Fraleigh was not the agent of the company to collect the premium, but was the agent of Shepherd. We have already said, that if in reference to any particular transaction, it became matter of controversy whether Fraleigh acted as the agent of the company or as the agent of Shepherd, a question not of law for the court, but of fact for the jury would be presented. The second instruction affirmed as matter of law, that Fraleigh had no authority to contract for the rewriting of the policy, and no authority to extend the time of payment of the premium; and unless the jury believe from the evidence, that the company had full knowledge of the agreement prior to the death of Silberman, and ratified or confirmed it, they would find for the defendant. An instruction requested, must be wholly correct in point of law, or there is no error in the refusal of it. Commingled with other matter, there is in the instruction the unequivocal denial of the authority of Fraleigh to extend the time of payment of the premium, an authority with which we have pronounced he was clothed. For this, if not for other reasons, the instruction was properly refused. As to the third instruction, it is sufficient to say, the evidence was uncontroverted, that of the agreement as to the rewriting of the policy, the defendant had knowledge before the death of Silberman. The application for rewriting and the policy had been transmitted to, and was received by the home office in New York, and the policy, it seems, was not returned until after the commencement of this suit. The instruction was contradictory of the positive, uncontroverted evidence, and was properly refused. The fourth is a general instruction to the jury, to find for the defendant, if they believe the evidence; an instruction, which without invading the province of the jury, cannot be given when the case fairly depends

upon the sufficiency and weight of the evidence.—1 Brick. Dig. 335, § 3. The fifth and sixth are inconsistent with the conclusions we have reached and expressed, repetition of which is unnecessary.

The seventh instruction relates to the sufficiency of the evidence to support the first special replication which is of tender of the premium within the time of credit allowed. The tender was made by Steiner on behalf and at the instance of the plaintiff. The point of the instruction seems to be, that although Steiner having the money, and offered prompt payment, yet, if he gave Fraleigh the option of immediate acceptance of the money, or of postponing acceptance until the return of the rewritten policies from New York, the evidence did not support the replication. As was said by the court in its general charge, "there is a difference between the tender of money and the offer to pay money," and "generally an offer to pay and a refusal by the person to whom the money is due to accept, is equivalent to a tender." The refusal to accept the money when offered, rendered unnecessary its production, as by its production no purpose would be accomplished.—*Rudolph v. Wagner*, 36 Ala. 698; *Root v. Johnson*, 99 Ala. 90; *Appleton v. Donaldson*, 3 Penn. St. 381; *Moynehan v. Moore*, 77 Am. Dec. 468, and note at close of opinion; *Lacy v. Wilson*, 24 Mich. 479. Fraleigh exercising his own option declined the offer of immediate payment of the money, converting the offer into a good tender. The instruction was properly refused, and the instructions upon the point given by the court were not subject to exception.

The eighth instruction read in connection with the seventh replication to which it makes express reference, affirms as matter of law, that Shepherd had no authority to bind the company by ratifying the alleged waiver by Fraleigh of the payment of the premium when due, and of the alleged agreement for rewriting the policy. The hypothesis of the instruction is that the extent of the authority of Shepherd is to be ascertained solely from the terms of the writing appointing his agent, which was in evidence. By that instrument Shepherd was a mere soliciting and collecting agent, but a provision that he was to perform such other duties as were re-

quired of him by the officers of the company, was inserted, it is fair to presume, in contemplation of the enlargement of his powers to meet the real or supposed exigencies of the company. Originally, his authority was limited to the State of Georgia, but by parol was extended to the State of Alabama, and with the knowledge of the company he assumed the title of general manager, in designation of the extent of his authority, establishing a department or branch office at Atlanta. General manager, it cannot be supposed, is of less significance than general agent. The extent of the authority of an agent employed to manage the business of a principal, is dependent upon the nature of the business and the degree to which it is placed under the control of the agent. Such an agent has implied power to do those things which are necessary and proper to be done in carrying out the business in its usual and accustomed way. The general manager of an insurance company has by implication this measure of authority. Mechem on Agency, § 395. As general manager, Shepherd requested the auditor to issue certificates of authority to certain persons whom he designated as agents of the company. And as he expressed it in his testimony, as manager in Georgia and Alabama, he "had exclusive control and jurisdiction." The extent of his authority, resting in parol, became matter for the determination of the jury, and the court could not affirm as a matter of law it did not extend to the imputed ratification.

The ninth instruction proceeds on the theory that the authority of Shepherd to ratify was dependent on his knowledge of the acts, the subject of ratification, prior to the 20th October, 1893. Shepherd had no less power at that time than he had prior or subsequent thereto. If the theory of the instruction is that there could be no ratification after the premium had become due, it is founded in error.—*Ins. Co. v. Norton,* 96 U. S. 241. If this is not the meaning, the instruction is vague, uncertain, and in its tendencies misleading, and was for this reason properly refused.—*Hughes v. Anderson,* 68 Ala. 280.

Necessarily we have already passed upon the matters involved in the exceptions to the general charge of

the court. The principles of law asserted in the charge are in accordance with the conclusions we have reached; and all questions of fact were submitted to the jury. Let the judgment of the court below be affirmed.

The opinion in this case was in course of preparation by Chief Justice BRICKELL when he retired from the bench. It has since been completed by him, and is adopted by the court.